WOVEN WIRE MATTRESS Co. *v.* SIMMONS and another.

(*Circuit Court, E. D. Wisconsin.*    June 14, 1881.)

1. RE-ISSUED LETTERS PATENT NO. 7,704—IMPROVEMENT IN BEDSTEAD FRAMES.

In re-issued letters patent No. 7,704, granted to the complainant for an improvement in bedstead frames, *held*, that the first claim, when considered in connection with the specifications, must be construed to mean a combination of side bars, inclined double end bars, and elastic coiled wire fabric attached only to the end bars, with the end bars of the frame elevated above the side bars, so that the fabric will be suspended above the side bars, from end to end, of the frame; and that the second claim, in its reference to end bars, must be construed to mean inclined double end bars.

As the end bars of defendants' bed bottom are not inclined; and in view of the further fact, to be considered in the same connection, that

the end bars are not elevated above the side bars so as not to come in contact with them, but rest directly upon the side bars, and that the angle irons of the defendant's frame are not adjusted to hold the end bars above the side bars free from contact; and in view of the limitations to be necessarily placed on the complainant's patent because of the state of the art,—*held*, that the defendants do not infringe.

In Equity.

*Coburn & Thacher*, for complainant.

*West & Bond*, for defendants.

Dyer, D. J.    This is a suit in equity for an injunction, and to recover damages on account of the alleged infringement of certain re-issued letters patent granted to the complainant, May 29, 1877, for an improvement in bedstead frames, of which J. M. Farnham was the inventor and original patentee. In the specifications of the re-issue the patentee describes the invention as follows:

" My invention relates to a new frame which is provided with an elastic or flexible sheet or fabric for the support of the bedding.    The frame is made of proper size to be inserted within any ordinary bedstead.    My invention consists in the combination of the side bars and end bars, with the end bars elevated above the side bars in such a manner that the elastic fabric, stretched from end bar to end bar, can extend the entire width of the frame over the side bars, and an elastic fabric attached to the end bars only of the frame; and it also consists in the combination of the side bars and end bars of the frame connected together by standards or corner irons, B.    By this arrangment the fabric is securely held.    *    *    *    It will be observed that the purpose of this method of attaching the fabric to the frame is to give to the fabric its greatest elasticity, by attaching it at its ends only, and at the same time making it as nearly the full size of the frame as could be well done, while it·is substantially free from contact with the frame when used, excepting at its ends, where it is rigidly secured to the end bars."

More detailed description of the device in the specifications is as follows:

" To the ends of each side bar are secured, by means of bolts, *a, a,* upward projecting standards, B, B, made of metal or other suitable material.    These bolts pass through short longitudinal slots in the standards, whereby the latter may be adjusted to stretch the cloth when desired. These standards are grooved, or have ribs on their inner sides by which the ends of the end bars, C, C, are held.    The end bars connect the side bars and their standards with each other.    Each end bar is made of two pieces or bars, *b* and *c*, both of equal and full length.    Between them are held the

ends of the fabric constituting the bed bottom, and clamped by means of screws or bolts, *d, d.* The end bars are held in inclined positions, as shown in figure 1, by the ribs or grooves on the standards, and are held in place by means of screws, *e*, which are fitted through the standards, or by other equivalent devices. By being in the inclined position the end bars are arranged to hold the fabric secure, without coming in contact with its under side more than is necessary."

The claims in the re-issued patent are:

"(1) The combination of the side bars and end bars and elastic coiled wire fabric, D, attached only to the end bars, with the end bars of the frame elevated above the side bars, so that the fabric will be suspended above the side bars from end to end of the frame. (2) The combination in a removable bed bottom, or bedstead frame, of the side bars, A, standards or corner pieces, B, end bars, C, and the elastic fabric, D, combined and arranged substantially as and for the purposes specified. (3) The inclined double end bars, C, of a bedstead frame, arranged substantially as and for the purpose herein shown and described. (4) The standards, B, constructed as described, arranged longitudinally, adjustable on the side bars of a bedstead frame, to permit the inclined end bars to be set a suitable distance apart, as set forth."

The first and second of these claims are new in the re-issued patent. The third and fourth are the claims in the original patent, and are repeated in the re-issue. This re-issued patent has been sustained as against all prior devices in *Whittlesey* v. *Ames*, 18 O. G. 357, and I concur in the views expressed by Judge Blodgett in that case, touching the validity of the patent. The only question necessary to consider here is that of infringement. The defendants' device consists of the coiled wire fabric, side rails, double end rails, and certain kinds of corner irons which exhibit the element of adjustability. The end bars rest directly upon the side bars; that is, the inner edge of each end bar rests upon, and is in direct contact with, the side bars. One end bar is held in place by ordinary bolts which pass through it and the side bars. The other end bar is united with the side bars by what may be called angle irons and bolts. These angle irons are bolted to the under sides of the side bars and the end bar, and the face of the angle iron which thus rests upon and is fastened to the side bars, is longitudinally slotted, so that, in connection with screw and bolt, the iron is made adjustable. These irons do not hold the end bars elevated

above the side bars; that is, they are not constructed and applied so as to hold the end bar in a position where it is free from contact with the side bars. As before stated, the end bars rest directly upon the side bars. The outer face of the end of each end bar is covered by a piece of metal which is fastened to it by screws and projects slightly over the side bar where the two bars are brought in contact. The only purpose of this piece of metal, so far as I can see, is to give to the outside corners greater finish. The end rails are double, as in the complainant's device; and, between the two pieces which together make the end rail, the ends of the wire fabric are clamped and held.

Now, it is said by the counsel of complainant, in their brief, that "Farnham's invention consisted of the special way in which he attached this woven-wire fabric to the frame, whereby he produced new results that had never been attained in a bed bottom before; and that special way consisted in attaching the fabric to the end of the frame so that the coils extended from end to end of the frame of the kind shown, leaving the coils entirely free, thereby having the full elasticity and spring of the coiled wires that compose the fabric." And it is contended that the gist of the invention consists in an end attachment of the fabric, leaving it unattached to the side rails, so that the strain on the fabric is lengthwise of the coils of wire, thereby utilizing the elasticity and recoil of the coiled springs; that if this result is accomplished by resting the end bars directly on the side bars, and without elevating the end bars above the side bars so that they do not come in contact, and also without making the end bars inclined, the first claim of the complainants' patent is infringed. It seems to be the view of counsel that as the third claim is a claim on the special construction of the end bars alone, and as the fourth claim is a claim for the standards arranged as therein described, it was not the intention of the inventor to limit the construction of his first claim to the use of inclined end bars, or of any particular form of standards or corner irons. In determining what was the

invention patented to complainants, the original patent to Farnham, and the specifications, drawings, and claims of the re-issue, must all be taken into consideration. And although in the first and second claims of the re-issue the end bars are not described as inclined double end bars, and although in the second claim the end bars are not described as elevated above the side bars, I think the first claim must be construed to mean a combination of side bars, inclined double end bars, and elastic coiled-wire fabric attached only to the end bars, with the end bars of the frame elevated above the side bars, so that the fabric will be suspended above the side bars from end to end of the frame; and that the second claim must be held to mean the combination of the side bars, A, standards or corner pieces, B, inclined double end bars, C, and the elastic fabric, D, combined and arranged as and for the purposes specified.

In view of the state of the art the patent must be limited to the construction described. This was the view taken by Judge Blodgett in *Whittlesey* v. *Ames, supra.* He says:

"The steam-boat bunk bottom, shown in the testimony of Robert E. Campbell, and the Dreusike and Dye patents, must be considered as operating to limit the claim of this patent to the special devices shown. The Campbell bunk bottom was made of canvas, stretched from end rail to end rail, without outside fastenings; and although canvas may not come within the definition of an 'elastic sheet,' there can be no doubt that it is a 'flexible sheet.' The Dreusike bed was made of coiled-wire fabric, and while provision was made for side fastenings, I think there can be no doubt he intended that the strain of supporting the weight to be borne by the bed was to come upon the end fastenings. In the light of this evidence I think that while these two first claims in the re-issued patent may be sustained for the combination of the side rails, standards, end rails, and elastic coiled-wire fabric, yet it must be limited to the peculiar kind of side rails, standards, and end rails shown, or their manifest equivalents. Side rails, end rails, and elastic coiled-wire fabric were old, but the inclined end rail, made in two parts for the purpose of clamping the fabric and holding it suspended by means of the inclination between the points of attachment, seems, so far as the proof in these cases shows, to have been the invention of Farnham. So, too, his 'standards,' or corner pieces, B, are not shown to have been anticipated by any prior user or inventor. I think, therefore, that the owner of the Farnham patent had the right to claim by the re-issue the combination of the elastic coiled-wire fabric with these parts, whether they were new or old; but

he had not the right to claim broadly, for Farnham, the sole right of sus-
pending the fabric of which the bed bottom is made from ' end to end of
the frame,' because Campbell, Dye, and Dreusike had suspended the
flexible sheet of a bed bottom from end to end of the frame before Farn-
ham made his frame."

In this construction of the complainant's patent I fully
concur. As the different elements of the Farnham inven-
tion, considered separately, were old, and as flexible material,
if not the coiled-wire fabric, had been previously used in bed
bottoms by suspending it from end to end of the frame, it
seems very clear that the complainant's re-issued patent must
be closely limited to the construction which it describes. Con-
sidering the nature of the invention, and the language of the
specifications and claims, with the accompanying drawings, it
seems to me evident that, to establish infringement, in the lan-
guage of Judge Blodgett, "the peculiar kind of side rails, stand-
ards, and end rails, or their manifest equivalents," must be
shown; and it might be added that the peculiar adjustment of
the differents parts, or the clear equivalent of such adjust-
ment, should also be shown. Both Judge Shipman and Judge
Blatchford, as I understand them, concur in the construction
which Judge Blodgett has put upon this patent. *Woven
Wire Mattress Co.* v. *Wire Web Bed Co.* 1 FED. REP. 222;
*Woven Wire Mattress Co.* v. *Palmer,* 5 FED. REP. 812. In
*Woven Wire Mattress Co.* v. *Wire Web Bed Co., supra,* Judge
Shipman says: "Judge Blodgett is evidently of opinion that
the end bars of the first claim must be the ' inclined double
end bars ' of the third claim, and that the standard of the
second claim must be adjustable on the side bars, so as to
permit the enclosed end bars to be set a suitable distance
apart, substantially as stated in the fourth claim;" and for
the reason that in the case decided, the end bars were inclined,
thereby preventing the under side of the fabric from resting
on the end bars, Judge Shipman held the defendant's device
in that case an infringement. In *Woven Wire Mattress Co.*
v. *Palmer, supra,* Judge Blatchford evidently regarded the
inclination of the end rails and their elevation above the side
..ls by means of the corner standards as material; and, as

I construe his opinion, he mainly rests his judgment upon those features of the infringing device before him in finding infringement.

The bed bottom made by the defendants in the case at bar has been described.    The exhibit in evidence shows a slight inclination of the end rails.    But the proofs very satisfactorily establish the fact that such was not its original construction, and that in the bed bottoms which the defendants manufacture the end rails are made to rest squarely on the side rails and without any inclination of the former.    The testimony that such was the construction originally of the exhibit in evidence is corroborated by the fact that the exhibited bed bottom was made in 1879, has since been moved from place to place and used as an exhibit in other litigation, and the signs of wear and tear are evident in the fact that the different parts are considerably out of the lines of proper adjustment.    This, I think, must be plain to the eye of any mechanic; and, upon the testimony and an inspection of the exhibit itself, I am of the opinion that the slight inclination of the end rails now visible is attributable to the strain of the fabric, the shrinkage of the wood, and generally to wear and tear.    Since the end rails of the defendants' bed bottom are not placed above the side rails so as not to come in contact with them, but rest directly upon the side rails, it might be a close question whether there is in the defendants' device the elevation of the end rails above the side rails which is intended to be described in the complainant's patent.    Certainly, the angle irons of the defendants' frame, in a material respect, do not serve the purpose of the complainant's standards, for the latter are adjusted outside the rails and hold the end rails above the side rails so that they do not touch, and so that with the inclination of the end rails the under side of the fabric cannot rest on the end rails.

Whatever might be the view taken, if the only question was whether the defendants' frame shows the elevation of the end rails above the side rails exhibited in the complainants' drawings and model, or its equivalent, or if it was whether the

angle irons in defendants' frame are the equivalent of complainants' standards, I am of the opinion that in view of the limitations to be necessarily placed on the complainant's patent because of the state of the art when Farnham made his invention, the absence of inclined end bars in the defendants' bed bottom, in connection with the other differences between it and the complainant's frame just spoken of, relieves the defendants from the charge of infringement. In coming to this determination, I rely upon the proofs before me that the defendants have not constructed, and do not construct, their frames with inclined end rails; and it will be understood by the parties that a different conclusion entirely might result, if I were not satisfied from the proofs that the slight inclination now apparent in the exhibit in evidence is not attributable to original construction, but to the causes before stated.

Decree for defendants.